IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CLINTON B. ALLEN, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 07-0769-CV-SW-ODS |
| ) | Crim. No. 04-00035-01-CR-W-ODS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER AND OPINION DENYING MOTION FOR POSTCONVICTION RELIEF PURSUANT TO 28 U.S.C. § 2255

Pending is Movant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. The motion is denied, and the Court declines to issue a Certificate of Appealability.

## I. BACKGROUND

Movant was charged with five drug and firearm related counts. He proceeded to trial and was convicted of (1) conspiring to distribute five or more grams of cocaine base, (2) possessing five or more grams of cocaine base, and (3) two counts of carrying a firearm in furtherance of a drug trafficking crime. He was acquitted on one count of possessing diazepam with the intent to distribute, and the Government agreed the verdict on one of the gun charges should be set aside.

After the trial, Movant's attorney (Martin Warhurst) requested leave to withdraw; the motion was granted and a new attorney was appointed. The new attorney (Ronald Partee) represented Movant at sentencing and on appeal. At the sentencing hearing, the Court determined Movant was accountable for 46.72 grams of cocaine base. Movant's Offense Level was 32 and his criminal history category was III, resulting in a sentencing range of 151-188 months on the drug counts. Movant was sentenced to 151 months to be followed by a mandatory consecutive 60 month sentence on the gun

counts. The conviction and sentence were affirmed on appeal. United States v. Allen, 440 F.3d 449, cert. denied, 127 S. Ct. 458 (2006).

Now pending is Movant's request for postconviction relief, which presents arguments in three broad categories: (1) counsel was ineffective on appeal, (2) counsel was ineffective at sentencing, and (3) counsel was ineffective in his handling of post-trial matters. Additional details will be set forth in the context of the legal discussion.

## II. DISCUSSION

A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

2

Appellate counsel's decisions are also considered in light of their function to eliminate weaker claims. Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998). Consequently, appellate attorneys do not violate Strickland's performance prong when they fail to present arguments that have already been rejected on numerous occasions. Appellate attorneys also do not violate Strickland's performance prong if they fail to raise issues that would be reviewed only for plain error. See Reese v. Delo, 94 F.3d 1177, 1185 (8th Cir. 1996), cert. denied, 520 U.S. 1257 (1997).

### A. Ineffective Assistance of Appellate Counsel

Appellate counsel contended (1) there was insufficient evidence to support any of the convictions and (2) the Court's calculation of drug quantity was erroneous. Movant does not contest the wisdom of raising these issues, but now argues there were four additional arguments that should have been raised.

#### 1. Prosecutorial Misconduct

"The test for prosecutorial misconduct has two parts. First, the remarks must have been improper, and second, the remarks must have been so prejudicial as to deprive the defendant of a fair trial." Young v. Bowersox, 161 F.3d 1159, 1162 (8th Cir. 1998), cert. denied, 528 U.S. 880 (1999). Needless to say, if the remarks were not improper, there is no unfair prejudice to be gauged and the second component of the analysis becomes unnecessary. However, in the event an improper comment is revealed, it must be remembered that the standard of prejudice is relatively high. "The petitioner must show that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial--i.e., that absent the alleged impropriety, the verdict probably would have been different." Newlon v. Armontrout, 885 F.2d 1328, 1336-37 (8th Cir. 1989), cert. denied, 497 U.S. 1038 (1990) (quoting Moore v. Wyrick,

3

760 F.2d 884, 886 (8th Cir. 1985) (second quotation omitted)); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986). In making this assessment, the Court should consider (1) the cumulative effect of the improprieties, (2) the strength of the evidence, and (3) the curative action taken by the trial court. United States v. Guerra, 113 F.3d 809, 815 (8th Cir. 1997).

The Government's first witness was Detective Marcus May, who at the times relevant to this case was a member of the Kansas City Police Department's ("KCPD") tactical response team. He described the tactical response team's duties. Included in his description was the following:

> We also patrol what we call high crime target areas where citizens may call in with a complaint. If we're having trouble in a particular neighborhood we'll be put in there and do proactive stops and try to get familiar with the people in the area and see if we can't halt narcotics that may be going on in the area.

Tr. at 14. He then confirmed this was his specific task in August 1999 and described the area he was patrolling. Tr. at 14-15. Later, he was asked why he was in the area, and Detective May answered "[n]arcotics trouble and some shootings were going on at the time." Tr. at 16. At this point, Movant's trial counsel objected "to the relevance of the continued reference to this as a high crime area and a high drug area." Tr. at 16. The objection was sustained, but no curative measures were requested or delivered. Later, Detective Aaron Hendershot was asked to describe the duties of a "regular patrolman," and he answered "[b]asically, we handled calls for service. Work complaints by citizens in various complaints, either burglaries, narcotics, high crime areas, like that. Just pretty much work in the community." Tr. at 35-36. No objection was made.

The second area of alleged misconduct involves Movant's claim the Government attempted to circumvent an order suppressing certain statements. A Magistrate Judge recommended suppression of Movant's statements regarding keys to a vehicle he had been driving. The Government did not object, so the Report and Recommendation became the Order of the Court as to this issue. During the trial, one of the officers was

4

asked some questions about events that occurred around the time the suppressed statement was made. The officer was not asked what Movant said, and the officer did not report any of Movant' statements. Tr. at 80-81.

The final instance of alleged misconduct occurred during the questioning of Wesley Box. Box provided much of the testimony regarding the workings of the conspiracy and Movant's involvement. Box was asked if he was "worried" about having to testify, and he responded, "[a] little." He was then asked if he was "worried" about his grandmother; he responded affirmatively just as Movant's attorney raised an objection. During the ensuing bench conference, counsel requested a mistrial. R. at 150. The objection was sustained and the jury was instructed to disregard the question and answer; the motion for mistrial was overruled. Tr. at 151.

In evaluating the strength of the claim on appeal, the Court first considers whether any of these acts are improper. The second instance was not improper because the question asked and the answer provided did not violate the Court's order suppressing certain statements. Detective Hendershot's description of a patrolmen's duties also does not raise concerns; to say that a patrolmen responds to calls and complaints from citizens does not create the impression that any particular area is known as being a drug trafficking area.

This leaves, then, the questions to Detective May purporting to establish a particular area as one known for "high crime" or drug trafficking and the questions about Box's concerns about his grandmother. While improper and objectionable, the Court does not believe sufficient prejudice resulted to render the trial unfair or to otherwise affect the outcome. The jury knew about numerous drug-related events in the area simply by virtue of the testimony involving Movant's (and others') conduct. As the Court of Appeals succinctly summarized, "[a] number of police officers testified to encounters that they had with Mr. Allen between 1999 and 2003 in which significant amounts of drugs or weapons were involved." 440 F.3d at 451. The objectionable testimony could not have significantly accentuated the properly-admitted evidence. As for Box's testimony, it must be remembered that the jury was instructed to disregard the question and answer. "The court, unless there is evidence to the contrary, should assume that a

5

jury will follow a curative instruction." United States v. Johnston, 353 F.3d 617, 623 (8th Cir. 2003), cert. denied, 541 U.S. 1068 (2004); see also United States v. Karam, 37 F.3d 1280, 1288 (8th Cir. 1994), cert. denied, 513 U.S. 1156 (1995).

The Court concludes the alleged misconduct could not have affected the outcome of the trial and did not prejudice Movant's rights. Therefore, appellate counsel was not ineffective for failing to raise the issue on appeal.

### 2. Movant's Right to Testify

Movant contends his attorney should have raised an issue about the Court's advice regarding his right to testify. Before the jury was selected, the Court advised Movant as follows:

> All right. Mr. Allen, I want to inform you before we bring the panel in this morning that you have the right to testify if you wish to do so. You also have the right not to testify. And if you elect not to testify and if you ask me to, I will tell the jury that the jury can't draw any inference of your guilt. They can't assume you're guilty simply because you have exercised your rights under the Fifth Amendment.
>
> The decision as to whether to testify or not is yours and yours alone to make. I would expect you to rely upon the advice of Mr. Warhurst in making that decision. If you were to testify, I think you can expect a thorough and perhaps aggressive cross-examination. If you have prior felony convictions, those felony convictions might be introduced on the issue of your credibility and only on that issue. But ultimately that decision will be yours.
>
> And when we get to your side of the case, I will ask, again, whether it's your wish to testify or not. And at that time, you can tell me. But, please, keep these things in mind as you make that decision. Okay?

Movant answered affirmatively. Tr. at 3-4. During a break (and just before the cross-examination of the Government's final witness), the matter was brought up again:

Warhurst: I think we have five minutes of cross. And my evidence is
 going to be limited to admitting a couple of documents and

6

> the defendant will likely testify, has elected to testify against the advice of counsel.

The Court: All right. Let's re-visit this issue we talked about before the trial, Mr. Allen. You, of course have the right to testify. If you do testify you can expect a vigorous cross-examination. And if you have prior convictions those convictions could be admitted on the issue of your credibility. Again I would expect you to consult rely upon the advice of Mr. Warhurst but [if] after hearing that advice it's your wish to testify certainly you can do that. Is it in fact your wish to testify in this case?

Defendant: Could I talk to him for a minute[?]

The Court: Yes.

Defendant: I am not going to testify.

The Court: You will not testify?

Defendant: No.

The Court: You are certain about that?

Defendant: Yeah.

Tr. at 198-99. The defense rested without any objection from Movant. Tr. at 204.

"A district court is not required to obtain from a defendant an express, on-the-record waiver of his right to testify. If a defendant wishes to exercise his constitutional right to testify, a defendant must act affirmatively and express to the court his desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred." United States v. Ehrmann, 421 F.3d 774, 783 (8th Cir. 2005), cert. denied, 546 U.S. 1122 (2006) (quotations omitted). While an on-the-record waiver removes all doubt, a defendant's silence in the face of counsel announcing the defense has rested is enough to waive the right. United States v. Blum, 65 F.3d 1436, 1444 (8th Cir. 1995), cert. denied, 516 U.S. 1097 (1996).

According to Movant, the difficulty is that the Court's statements about Movant's right to testify were misleading. He focuses upon those passages where the Court

7

Case 4:07-cv-00769-ODS   Document 13   Filed 02/22/08   Page 7 of 14

indicated Movant should "rely upon the advice" from his attorney. Movant contends this phrasing undercut the fact that the decision as to whether to testify belonged to him. Of course, that is exactly what the Court told Movant: in the first exchange Movant was told "ultimately that decision will be yours" and in the second exchange Movant was told that he could testify after hearing his attorney's advice if he wanted to do so. Moreover, Movant was never told that he had to do what his attorney advised or that the decision was not his. Considering the Court's statements *en toto* instead of parsing out phrases, the Court's declaration accurately advised Movant of his right to testify. In fact, it is noteworthy that after the first exchange Movant indicated a desire to testify in spite of his attorney's cautions, thereby demonstrating Movant understood the final decision was his and not his attorneys.

Movant's claim that he was misled as to his authority to decide whether to testify is weak at best. A reasonable appellate attorney would not raise such a claim, and Movant was not prejudiced by the failure to raise the claim.

### *3. Instructional Issues*

(a) drug quantity

Movant contends his attorney should have raised two instructional issues on appeal. The first involves instructions to the jury regarding the quantity of drugs. The trial occurred after the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004) and before it decided *United States v. Booker*, 543 U.S. 220 (2005). In this time period, courts were uncertain how to address drug quantities that were relevant only to the Sentencing Guidelines. In this case, the Court provided for a jury determination of the issue. Instructions 27 and 31 told the jury that if it found Movant guilty it would have to determine (unanimously, and by proof beyond a reasonable doubt) the amount of cocaine base involved and provided guidance for making this determination. The different instructions related to different drug charges, and the Verdict Forms for these

8

counts included a space for the jury to record their finding. No objection was made to these instructions or Verdict Forms. Tr. at 121-28.

As stated, *Booker* was decided after trial and before sentencing. *Booker* established, among other things, that (1) the Sentencing Guidelines are advisory and (2) guideline issues should not be submitted to the jury. Armed with this knowledge, the Court nonetheless adopted the jury's determination that the amount of cocaine base involved was 46.72 grams. This determination was affirmed on appeal. 440 F.3d at 452-53. Movant now contends the jury instructions regarding drug quantity were inadequate, and his appellate attorney should have raised the issue.

There was no objection made at trial, so appellate review would have been limited to an examination for plain error. As noted earlier, appellate counsel is rarely ineffective for failing to seek review of a claim that was not preserved for appellate review. Movant has never suggested a different instruction, so it is impossible to conclude there is something wrong with the ones that were delivered.

Movant essentially argues the jury's decision was wrong, so therefore the instruction must have been flawed. Movant points to the Court's comments about certain aspects of the jury's finding being "unclear" and "a mystery," but those comments related to the jury's apparent inclusion of 7.63 grams of cocaine base that were ultimately not included in the total by the Court. Sentencing Tr. at 3, 8. In any event, Movant's reasoning ignores (1) the fact that the determination of quantity was made by the Court, as required by *Booker*, and (2) the Court's determination was affirmed. Any errors in the instructions leading to the jury's advisory opinion is of little weight when the ultimate decision is made by the Court, the issue of quantity was argued before the Court made its decision, and the decision is affirmed on appeal. In light of these considerations, along with the failure to preserve the issue for appeal or to suggest alternative language for the instructions, the Court concludes appellate counsel's performance violated neither of <u>Strickland</u>'s prongs.

9

(b)  variance

Movant contends the evidence at trial created a fatal variance or constructive amendment of the Superceding Indictment, and appellate counsel should have raised the issue at trial.  A variance is reviewed for harmless error, and the case reversed only if Movant's substantial rights were violated.  United States v. Barth, 424 F.3d 752, 759 (8th Cir. 2005).  Substantial rights are violated if "(1) the defendant could not reasonably have anticipated from the indictment the evidence to be presented against him; (2) the indictment is so vague that there is a possibility of subsequent prosecution for the same offense; or (3) the defendant was prejudiced by a 'spillover' of evidence from one conspiracy to another."  Id. (quotation omitted).  In contrast, "[a] constructive amendment, which is reversible per se, occurs when the essential elements of the offense are altered, either actually or in effect, after the grand jury has issued the indictment."  United States v. Johnson, 353 F.3d 617, 623 (8th Cir. 2003), cert. denied, 541 U.S. 1068 (2004).

Movant argues a variance occurred because Count I charges a conspiracy occurring "between on or about January 1, 1999, to and including October 30, 2003, said dates being approximate," but the only evidence admitted related to events in 2003.  This is a rather unusual argument: instead of contending evidence beyond the Indictment's scope was introduced at trial, Movant argues evidence of a narrower scope was introduced.  This does not constitute a variance.  In any event, Movant's characterization of the evidence at trial is incorrect.  Once again, the Court will rely upon the Eighth Circuit's evaluation of the sufficiency of the evidence:

> A number of police officers testified to encounters that they had with Mr. Allen between 1999 and 2003 in which significant amounts of drugs or weapons were involved.  Viewed in a light most favorable to the government, this evidence was manifestly enough for a reasonable jury to find Mr. Allen guilty of conspiring to distribute crack cocaine.

440 F.3d at 451.  Given the standard of review and the dubious factual support, appellate counsel was not ineffective for failing to raise this claim.

10

Movant's contention regarding a constructive amendment of Count I focuses on the charge's allegation that Movant conspired "to distribute cocaine base . . . *and* diazepam . . . ." (emphasis supplied). It is well-established that (1) when there are two methods of committing a crime the Indictment must charge in the conjunctive, and (2) the Government need only prove, and the Court should instruct, in the disjunctive. E.g., United States v. Pate, 932 F.2d 736, 737 n.2 (8th Cir. 1991); United States v. Klein, 850 F.2d 404, 406 (8th Cir.), cert. denied, 488 U.S. 867 (1988). Here, there were two methods of committing the crime of conspiracy: by conspiring to distribute cocaine base and by conspiring to distribute diazepam. The Superseding Indictment properly charged in the conjunctive, and the jury was properly instructed in the disjunctive. Counsel was not ineffective for failing to raise this issue on appeal.

## B. Ineffective Assistance of Counsel at Sentencing

### *1. Review of the Presentence Investigation Report*

Movant contends his attorney did not review the Presentence Investigation Report ("PSI") with him before the sentencing hearing. He also contends the Court failed to properly "verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report" as required by Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure, and had the Court done so the failure of counsel to confer with Movant would have been revealed.

The Record provides strong indications that counsel discussed the PSI with Movant. The preliminary PSI was prepared in February 2005, when Movant was still represented by Warhurst. Partee was not appointed until March 2005, and of course did not have the benefit of sitting through the trial. The Trial Transcript was not filed until June 2005 – a little more than a month after the sentencing. Thus, Partee's primary source of information about the trial would have been information relayed by Movant.

11

Counsel's comments during the sentencing hearing confirm Partee both (1) talked to Movant and (2) relied upon Movant's comments to make informed objections to the PSI. Partee declared he had "reviewed Mr. Warhurst's file, looked at his notes and so forth but I haven't seen an actual transcript of the trial itself. So some of what I say I'm relying on what Mr. Allen has told me that happened at trial." Sentencing Tr. at 3. One of Partee's objections was acted upon by the Probation Officer when preparing the final PSI, resulting in a reduction of the amount of cocaine base attributable for sentencing purposes. Sentencing Tr. at 3. Other objections were made (as reflected in the April 19, 2005, Addendum to the Presentence Report), and Partee argued some of those at the hearing; all of these objections are of such a nature that they could not have been made absent knowledge about the case, and in the absence of the transcript Movant had to be the source of Partee's information. In particular, Movant's personal denials of certain facts (such as denying prior arrests and denying gang associations) could have been made *only* if Partee discussed the PSI with Movant. For his part, when given an opportunity to speak on his behalf Movant did not contend he had neither reviewed nor discussed the PSI with his attorney, Sentencing Tr. at 12, and he later answered affirmatively when asked whether he understood the proceedings and denied having any questions. Sentencing Tr. at 17. Finally, Movant does not suggest there is anything in the PSI that is incorrect or objectionable, so even if there was a technical flaw in the Court's compliance with Rule 32(i)(1)(A) Movant has not suggested (much less demonstrated) prejudice.[1]

## 2. Mitigating Factors

Movant's second argument related to the sentencing hearing alleges counsel was ineffective for failing to argue for a sentence below the guideline range. As noted, Booker was decided before Movant was sentenced and established that the guidelines

---

[1]Of course, it must be remembered that this allegation seeks relief based on ineffective assistance of counsel, not a claimed violation of the Rule.

12

were advisory. The Court's comments at sentencing confirm the Court's understanding of <u>Booker</u>'s impact. Sentencing Tr. at 9, 13. Movant contends counsel should have asked for a sentence below the guidelines, but does not suggest what could have been said or done to alter the Court's conclusion that a sentence within the guideline range was reasonable. There is no basis for concluding either of <u>Strickland</u>'s prongs was violated.

## C. Ineffective Assistance of Counsel After the Trial

Movant contends his attorney was ineffective after the trial because he failed to request a new trial. Movant alleges that while Box was being interviewed for his own PSI, he recanted his trial testimony against Movant. Unfortunately, Movant has not specified the portion of Box's PSI wherein he allegedly recanted his trial testimony. Based on the Court's best estimation of the basis for Movant's argument, the claim must be rejected.

Box's PSI indicates he told the probation officer "drugs were given to him by another person and he just got caught holding them. He denied he was involved in the sale of drugs." Box's PSI, ¶ 32. This statement does not purport to establish his testimony at trial was false; at best, it would serve as impeachment. It does not really "recant" anything because the PSI was prepared in September 2004 and Movant's trial was in December 2004; thus, his sworn testimony at trial was delivered *after* the unsworn statements Movant relies upon as a "recanting" of the testimony.

The Court also notes the statement attributed to Box in his PSI would have been of limited value, either at trial or as support for a motion for new trial. Box testified about his introduction to and interactions with Movant. Tr. at 134-39, 143-44. He also testified that he and the others arrested agreed to deny any criminal activity, and he adhered to that plan when initially interviewed. R. at 148-49; 157. A bare statement to the probation officer to the effect that he did nothing wrong would not be so compelling as to warrant a mistrial or otherwise undermine confidence in the verdict. Thus, assuming

13

(without deciding) that counsel could have somehow presented the issue to the Court, counsel's actions did not prejudice Movant.

### III. CONCLUSION

For these reasons, Movant's request for postconviction relief is denied.

IT IS SO ORDERED.

                                                                                 /s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: February 22, 2008               UNITED STATES DISTRICT COURT